UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:13-CV-053-TBR

LEONEL MARTINEZ,								PLAINTIFF

v.

RANDY WHITE, WARDEN *et al.*,						DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court upon a Motion for Summary Judgment, [R. 274], by Defendants Amber Bray, Bill Harvey, Mary Herrell, Tim Lane, Josh Patton, CTO Victoria, and Randy White ("Defendants"). [R. 274.] Plaintiff Leonel Martinez responded, pro se. [R. 284.] Also before the Court are four motions submitted by Martinez: "Motion on Response to Defendants Affidavit of Perjury," [R. 268], "Motion to Object for this Court to Allowed Defendants to File a 3rd Motion for Summary Judgment," [R. 275], "Motion to Appoint Counsel," [R. 283], and "Motion for this Court to Recognized as a Retaliation Claim," [R. 285]. These matters are ripe for adjudication. For the reasons stated herein, Defendants' Motion for Summary Judgment, [R. 274], is **GRANTED**, and Martinez's four motions are **DENIED**.

## BACKGROUND

Plaintiff Leonel Martinez is a Hispanic man who was incarcerated at Kentucky State Penitentiary ("KSP") during the time period of the claims in this case. [R. 1 at 1-2.] On April 8, 2013, Plaintiff Martinez filed a verified Complaint with the Court alleging that he was denied prison employment based on his race by Unit Administrator Bill Harvey and Warden Randy White. [R. 1.] Martinez claims:

> Each time I file for a prison job, Bill Harvey who is the one in charge of given [sic] inmates jobs refuses to give me any jobs that I have requested. But instead he will give an inmate who has less clear conduct a job. I do feel discriminated

1

> against because I am Hispanic and he shows favoritism to other inmates . . . This action is before this court asking the following relief herein. The reason is due to the lack of investigation into the matter of my grievance before the Warden that justifies the right to an equal opportunity of a job placement has fully been mishandled for reasons of a personal conflict or other reasons of Bill Harvey and also Warden Randy White.

[R. 1 at 2-3.] Martinez alleges that his claims against White and Harvey occurred during February and March of 2013. [*Id*. at 3.] On initial review of Martinez's claims, the Court allowed Martinez's Fourteenth Amendment equal protection claim to proceed against White and Harvey. [R. 21.] On September 16, 2014, Martinez filed a verified Amended Complaint in which, amongst other claims, he alleged:

> Josh Patton, Tim Lane, and Victoria use raceist [sic] remarks such as if you want a job go back to Mexico. This has been happening from 7-19-14 thru [sic] 9-10-14 and even still to date! I want this to stop! When I file applications for jobs they are over looked by the above people and given to other people who are white, black or [I]ndian!

[R. 32 at 6.] On April 10, 2015, the Court allowed Martinez's claim that he was denied prison employment based on race under the Equal Protection Clause of the Fourteenth Amendment to proceed against Defendants Patton, Lane, and Victoria. [R. 37 at 6.]

On May 18, 2015, Martinez submitted a motion to add two defendants to the case: corrections officers Amber Bray and Mary Herrell. [R. 47 at 1.] In that motion, Martinez alleges: "I have been put in segregation by two different female officers for discrimination and retaliation." [*Id*.] In detail, Martinez claims that both Bray and Herrell falsely reported him for inappropriate sexual behavior as retaliation for filing the instant lawsuit.[1] On June 24, 2015, the

---

[1] On June 2, 2015, the adjustment committee at KSP held a hearing and found Martinez guilty of inappropriate sexual behavior, as reported by Herrell. [R. 268-1 at 3.] The adjustment committee issued a penalty of a reprimand and a warning. [*Id*.] On September 21, 2015, the adjustment committee held a hearing and found Martinez guilty of stalking Herrell in relation to the outcome of the previous hearing involving Herrell and Martinez. [R. 268-1 at 9.] The adjustment committee issued a penalty of forty-five days in segregation. [*Id*.] On February 28, 2015, the adjustment committee held a hearing and found Martinez guilty of inappropriate sexual behavior, as reported by Bray. [*Id*. at 15.] The adjustment committee issued a penalty of forty-five days in segregation. [*Id*.]

2

Court granted Martinez's motion, and Bray and Herrell were added to the case as defendants. [R. 53.]

Thus, Martinez's surviving claims are as follows: a Fourteenth Amendment equal protection claim against defendants Randy White, Bill Harvey, Josh Patton, Tim Lane, and CTO Victoria, [R. 21 at 8; R. 37 at 6], and a First Amendment Retaliation claim against defendants Amber Bray and Mary Herrell. [R. 47; R. 53.] Currently before the Court is Defendants' Motion for Summary Judgment, [R. 274].

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the plaintiff's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the defendant satisfies his or her burden of production, the plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner,* 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir.1979) (citation omitted), nor to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975).

Finally, it should be noted that "'a verified complaint . . . satisfies the burden of the nonmovant to respond' to a motion for summary judgment, unlike 'mere allegations or denials' in unverified pleadings." *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999)) (en banc).

## DISCUSSION

In their Motion for Summary Judgment, Defendants contest both Martinez's equal protection claim as well as his retaliation claim. [*See generally* R. 274.] The Court will analyze each of their arguments in turn.

I. **Equal Protection Claims**

Martinez contends that he was denied prison employment because he is Hispanic. [R. 1 at 2; R. 32 at 6.] The Court allowed this matter to proceed as a Fourteenth Amendment equal protection claim against Defendants Randy White, Bill Harvey, Josh Patton, Tim Lane, and CTO Victoria. [R. 21 at 8; R. 37 at 6.]

In response to Martinez's equal protection claim, Defendants argue that they are entitled to qualified immunity. Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether qualified immunity is available to a defendant involves a two-step process: "[f]irst, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred." *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Then, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). In order for a law to be deemed as "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell*, 308 F.3d at 602. In other words, "the unlawfulness [of the action] must be apparent." *Id*. The Supreme Court has stated that the sequence of these two steps is not mandatory: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court will begin its qualified immunity analysis by addressing whether Martinez has "alleged facts or produced evidence which, taken in a light most favorable to him, show that the defendants' conduct violated a constitutionally protected right." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 457-58 (6th Cir. 2011). As the Court finds that he has not, it need not address

the remaining factors, and the Court concludes that the defendants are entitled to qualified immunity.

### A. Equal Protection Analysis

As noted above, Martinez alleges that his rights under the Equal Protection Clause of the United States Constitution were violated by Defendants when they denied him prison employment based on his race. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Umani*, 432 F. App'x at 458.

#### 1. Direct Evidence

"Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani*, 432 F. App'x at 458. Martinez has not presented any direct evidence of discrimination concerning White or Harvey. However, Martinez argues "Josh Patton, Tim Lane, and Victoria use raceist [sic] remarks such as if you want a job go back to Mexico." [R. 32 at 6.] Furthermore, Martinez

adds: "When I file applications for jobs they are over looked by the above people and given to other people who are white, black or [I]ndian!" [*Id.*] Defendants respond that while the alleged comment is inappropriate, "those words alone do not rise to the level of a constitutional violation." [R. 274 at 15.]

It appears that Defendants have mischaracterized Martinez's claim. While it is true that "[t]he use of a racial epithet by itself is not an actionable violation of the Equal Protection Clause," *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003), it is also true that "[t]he use of racially discriminatory language can provide some evidence of a discriminatory purpose when that language is coupled with some additional harassment or constitutional violation." *Id*. Here, Martinez provides the alleged discriminatory language as evidence that "the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Wilson v. Ohio*, 178 F. App'x 457, 463 (6th Cir. 2006) (quoting *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir.2003)). However, the question remains whether the alleged comment satisfies Martinez's burden of presenting direct evidence.

The Court finds that the alleged comment by Patton, Lane, and Victoria, "[I]f you want a job go back to Mexico," [R. 32 at 6], does not constitute direct evidence. The Sixth Circuit defines direct evidence of discrimination as evidence that "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Wilson*, 178 F. App'x at 463 (6th Cir. 2006) (quoting *Johnson,* 319 F.3d at 865). In order for the comment at issue to support a finding of racial discrimination, a factfinder would have to infer that (1) the defendants were going to deny Martinez's application for a job and (2) the denial of his application is due to the fact that he is Mexican. In comparison, the remarks that courts have found to be direct evidence

7

of discrimination as motivation for an employment action in the past often contained racial slurs or an express statement that race was a determining factor in the employment decision. *See, e.g., Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995) (holding that Plaintiff provided direct evidence that his termination was racially motivated through evidence that his supervisors had used racial slurs on several occasions); *Taylor v. Bd. of Educ. of Memphis City Sch.*, 240 F. App'x 717, 720 (6th Cir. 2007) (holding that the plaintiff proffered direct evidence through an administrator's comment that a white applicant was hired in order to "to maintain racial balance" and that "[w]e do have to maintain racial balance, but it could have been done in a better way. She [ (Glynda Cryer, the administrator who covered the interview panel) ] could have had a larger pool of better qualified whites."). Therefore, the Court finds that the alleged comment by Patton, Lane, and Victoria does not constitute direct evidence.

### 2. Prima Facie Case

In the absence of direct evidence of discrimination, Martinez must establish a prima facie case of discrimination in violation of his equal protection rights under the *McDonnell Douglas* analysis. *Umani*, 432 F. App'x at 460 (citing *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 275 (6th Cir. 2003)). He must show:

> (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or was treated differently than similarly-situated members of the unprotected class.

*Id*.

Regarding the first factor, Martinez is Hispanic and therefore a member of a protected class. Second, he avers in his verified complaint that he was subjected to an adverse employment decision when Defendants refused to give him the jobs for which he applied and gave the positions to other inmates of different races instead. [R. 1 at 2; R. 32 at 6.] Neither party argues

the third factor of whether Martinez was qualified for any of the positions for which he applied. Ultimately, Defendants focus their argument on the fourth factor, contending that Martinez "failed to demonstrate that he has been treated differently regarding prison jobs than any other inmates." [R. 274 at 9.][2] "To be a similarly-situated employee, the comparative employee 'must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460. Here, Martinez contends that the jobs he applied for were "given to other people who are white, black or [I]ndian!" [R. 32 at 6.][3] However, he fails to provide any evidence of another similarly situated inmate of a different race that was treated differently. Thus, the Court finds that Martinez failed to establish a prima facie case under the *McDonnell Douglas* analysis. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that inmate failed to show that he was treated differently than other similarly-situated inmates when he "did not present any evidence that [Defendant] treated him differently than other inmates who exercised

---

[2] Defendants also attempt to argue that Martinez did not apply for a job during the two time frames at issue. In support, Defendants provided an affidavit from Unit Administrator Bill Harvey stating that Martinez did not submit an application for a job at KSP for the months of February and March of 2013. [R. 274-1.] Furthermore, Defendants provided evidence that Martinez was housed in a restrictive unit from January 23, 2013 through February 22, 2013. [R. 274-2 at 1.] However, this still leaves the period of July 19, 2014 through September 10, 2014, during which Martinez claims his applications were denied by Patton, Lane, and Victoria. [R. 32 at 6.] Concerning this period, Defendants first argue that CTO Victoria was a "classification and treatment officer" and, therefore, "did not assign jobs to inmates." [R. 274 at 15.] This argument ultimately fails because Defendants provide no supporting evidence substantiating that this was CTO Victoria's position. Defendants also argue that Martinez was assigned a job on July 1, 2014 and "could not request reassignment for 90-days." [R. 274 at 16.] In support, Defendants cite to the affidavit of Unit Administrator Josh Patton. Although Patton states that Martinez was assigned to a job on July 1, 2014, his affidavit does not contain any reference to a policy that would prevent Martinez from requesting reassignment for ninety days. Furthermore, it is unclear how Patton would know when Martinez applied for a job during this time period considering that he was not physically present at KSP. [R. 274-7 at 1 ("From May 15, 2014 to August 15, 2014, I was serving a temporary assignment at Western Kentucky Correctional Complex, and was not present at KSP during the dates in 2014 that Inmate Martinez mentions in his Motion.")] Thus, the Court finds Defendants arguments regarding the period of July 19, 2014 through September 10, 2014 unconvincing.

[3] *See also* R. 32 at 6 ("I have tryed [sic] to get prison jobs, Unit Administrator Bill Harvey discriminated against me to when he shows favor to white, black, people when they come out of the hole and he give them jobs, when I have more than 6 to 8 months clear conduct and he being Bill Harvey denies me jobs that I file for").

9

their rights under the prison grievance system"); *Dunn v. Kentucky Dep't of Corr.*, No. 5:12-CV-192, 2014 WL 1319777, at *7 (W.D. Ky. Mar. 28, 2014) (Russell, J.) (holding that inmate failed to show that similarly situated classes of inmates were treated differently when he "allege[d] that inmates of other religious faiths [were] provided with more desirable options but offer[ed] no evidence to support this allegation.").

In summary, Martinez failed to produce direct evidence of discrimination or provide evidence showing that he was treated differently than other similarly-situated prisoners. Thus, he has not established a claim of race-based discrimination in violation of his equal protection rights under the Fourteenth Amendment. Defendants are therefore entitled to qualified immunity on Martinez's race-based equal protection claim.

## II. Retaliation Claim

Martinez also argues that Defendants Amber Bray and Mary Herrell retaliated against him for filing the instant suit by reporting him for inappropriate sexual behavior on February 3, 2015 and April 13, 2015. [R. 47 at 1-2; R. 284 at 3.] Martinez claims that "KSP's lawyers" had Bray and Herrell fabricate reports of inappropriate sexual behavior against Martinez so he would be put in segregation and, therefore, not have access to the law office to work on his lawsuit. [R. 47 at 2.] Defendants respond that Martinez has failed to establish any of the required factors for a claim of retaliation. [R. 274 at 12.]

> The Sixth Circuit has identified three elements of a First Amendment retaliation claim:
>
> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

10

*Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). "The plaintiff has the burden of proof on all three elements. Thus, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). "Admittedly, retaliation 'rarely can be supported with direct evidence of intent.' But conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.' *Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir. 1987)." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal citation omitted). "Even if the plaintiff establishes all three elements, the defendant may avoid liability by showing 'that he would have taken the same action in the absence of the protected activity.'" *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (citing *Thaddeus-X*, 175 F.3d at 399).

Regarding the first element, filing a lawsuit or an internal grievance constitutes protected conduct in the Sixth Circuit. *See Thaddeus-X*, 175 F.3d at 391; *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000). It is undisputed the Martinez filed the instant law suit under 42 U.S.C. § 1983. [R. 1 at 1; R. 32 at 1.] Thus, Martinez has satisfied the first element.

Under the second element, Martinez claims that Bray and Herrell fabricated reports of inappropriate sexual behavior against Martinez so he would be put in segregation. [R. 47 at 2.] The Sixth Circuit has held that "restricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010); *Sublett v. Sheets*, No. 5:15-CV-00199-TBR, 2017 WL 2385351, at *6 (W.D. Ky. June 1, 2017), *aff'd in part, appeal dismissed in part sub nom. Sublett v. Delaney*, No. 17-6483, 2018 WL 6622183 (6th Cir. Nov. 13, 2018), *reh'g denied* (Dec. 5, 2018) ("The Court believes that a

reasonable jury could conclude that the penalty of disciplinary segregation would deter a person from exercising his First Amendment right to file non-frivolous grievances and lawsuits against prison officials."). Therefore, Martinez has satisfied the second element.

Under the third element, Martinez alleges in his unverified response that both Herrell and Bray told him that he was put in segregation in retaliation for filing the instant law suit. [R. 284 at 3.]⁴ A multitude of unpublished Sixth Circuit cases have adopted the "checkmate rule," whereby "a proven infraction of prison rules will generally satisfy the defendant's burden" to demonstrate it would have taken the same disciplinary action anyway. *Id.* at 442; *see Annabel v. Frost*, No. 14-10244, 2016 WL 270294, at *4 (E.D. Mich. Jan. 22, 2016) (listing cases). However, the Sixth Circuit also suggested in *Thomas v. Eby*, a published case, that the checkmate rule is not so cut-and-dry. 481 F.3d 434, 441-442 (6th Cir. 2007). This Court previously held on the matter:

> [W]here an inmate alleges that a prison official retaliated against him by filing a disciplinary report, an administrative finding that the inmate is guilty of the alleged misconduct will not act as a *per se* bar to the inmate's claim. Instead, based upon *Thomas*, the inmate may still prevail if he was singled out for punishment after engaging in protected conduct.

*Sublett v. Sheets*, No. 5:15-CV-00199-TBR, 2017 WL 2385351, at *8 (citing *Thomas*, 481 F.3d at 442). In *Sublett*, this Court found that the inmate plaintiff, Sublett, successfully brought evidence that the defendant guard possessed a retaliatory motive when she alleged in a disciplinary report that plaintiff was masturbating in full view of others. *Sublett*, No. 5:15-CV-00199-TBR, 2017 WL 2385351, at *3.⁵ As support, Sublett submitted sworn declarations from

---

⁴ Regarding Herrell, Martinez states: "[I] was told by officer Herrell that, i [sic] was ponishment [sic] for add her to this case." [R. 284 at 3.] Regarding Bray, Martinez states: "officer Bray was very clear this was because [I] file a law suit against the warden." [*Id*.]

⁵ The Adjustment Committee, the KSP body in charge of adjudicating discipline reports, found Sublett guilty of "inappropriate sexual behavior," and imposed a penalty of forty-five days in disciplinary segregation. *Sublett*, No. 5:15-CV-00199-TBR, 2017 WL 2385351, at *3.

two other inmates that corroborated his claims. *Id*. at 9. In contrast, Martinez did not provide any evidence that the adverse action was motivated at least in part by the protected conduct. Thus, Martinez's retaliation claim must fail. Because this claim fails as a matter of law, the Court need not address the issue of whether Herrell and Bray are entitled to qualified immunity.

**III.   Remaining Motions**

Four motions submitted by Martinez remain on the docket. As they are relevant to Defendants' Motion for Summary Judgment, the Court will briefly address each motion.

**A. "Motion on Response to Defendants' Affidavit of Perjury"**

On October 4, 2018, Martinez filed a motion in which he claims that Officer Mary Herrell "committed perjury, lying to this court in her affidavit." [R. 268 at 1.] In short, Martinez contends that Herrell lied in her disciplinary report form against Martinez when she stated that she saw him "rubbing his penis in a back and forth motion while staring at [her] and smiling" while fully clothed. [R. 268-1 at 1.] Despite the fact that Martinez appears to be referring to the disciplinary report rather than an affidavit, Martinez's allegation has no effect on the ultimate conclusion of this case. Martinez's claim of retaliation against Herrell still fails under the third element of a retaliation claim because he did not provide any evidence that the adverse action was motivated at least in part by the protected conduct. Thus, Martinez's "Motion on Response to Defendants Affidavit of Perjury," [R. 268], is DENIED.

**B. "Motion to Object for this Court to Allowed Defendants to File a 3rd Motion for Summary Judgment"**

On January 11, 2019, Martinez objected, [R. 275], to the Court's previous order in which it denied Defendants' Motion for Summary Judgment with leave to refile, [R. 272]. Federal Rule of Civil Procedure 56(e) provides:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly
> support an assertion of fact or fails to properly address another party's assertion of
> fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials--including the
> facts considered undisputed--show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). Here, the Court gave Defendants "an opportunity to properly support or address the fact[s]" asserted by allowing them to file Harvey's affidavit and authenticate Martinez's segregation records. [R. 272.] The Court also gave Martinez twenty-one days to file his response to Defendants' Supplemental Motion for Summary Judgment. [R. 272 at 2.] As the Court's order was proper under the Federal Rules of Civil Procedure and fair to both parties, Martinez's Motion to Object, [R. 275], is DENIED.

**C. Motion to Appoint Counsel**

On March 1, 2019, Martinez filed a Motion to Appoint Counsel, arguing that "he has not had any legal training and therefore is not skilled in the complicated science of law and need counsel to ensure him that all issues are being properly raised in this cause of action . . . ." [R. 283 at 1.] Martinez has made this motion twice before in this case. [*See* R. 5; R. 71.] The Court stands by the past two findings on this matter. [R. 10; R. 165.]

Based on a review of the documents filed by Plaintiff thus far, the Court finds that Plaintiff is articulate and able to represent himself sufficiently at this time. Consequently, the Court finds that Plaintiff has not set forth any "exceptional circumstances" warranting appointment of counsel. *See Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) ("Appointment of counsel 'is a privilege that is justified only by exceptional circumstances.'").

Furthermore, the Court's decision to grant summary judgment in favor of Defendants now renders this motion moot. Thus, Martinez's Motion to Appoint Counsel, [R. 283], is DENIED.

### D. "Motion for this Court to Recognized as a Retaliation Claim"

On March 1, 2019, Martinez filed a motion entitled "Motion for this Court to Recognized as Retaliation Claim, When an Inmate Challenge the Racial, Unfair Oppressive Abuse by Prison Officials and Because such Claim DOC and the Warden Endup Transferd [sic] the Inmate." [R. 285 at 1.] In his motion, Martinez alleges that he is being harassed, as well as subjected to racial abuse and unnecessary punishment at "GRCC." [*Id*.] Furthermore, he states: "if [I] challenge all this abuse in this court the result by DOC and GRCC warden will get me transferd [sic] and send me further a way from my family . . . ." [*Id*.]

Defendants respond that this motion should be denied for several reasons. First, the defendants in the instant case are not named in this motion, "therefore, his statements in said pleading are irrelevant to this case." [R. 287 at 1.] Second, the instant case pertains to events that occurred at KSP from 2013 to 2015, yet the events of this motion appear to have occurred at the complexes at Green River or Little Sandy in 2018. [*Id*.] Last, Defendants remind the Court that Martinez has been warned by the Court that any further motions to amend or supplement the complaint in this action would not be considered. [*Id*. at 2-3 (citing R. 173 and R. 207).]

In the instant motion, it appears that Martinez wishes to add further claims to his complaint. Thus, the Court finds that Martinez's instant motion is, in effect, a motion to amend or supplement the complaint. In order to stay consistent with the Court's previous warnings to Martinez, [R. 173 and R. 207], the Court will not consider Martinez's motion. Martinez's "Motion for this Court to Recognized as Retaliation Claim," [R. 285], is DENIED.

## CONCLUSION

In summary, the Court holds that Martinez has not established a claim of race-based discrimination in violation of his equal protection rights under the Fourteenth Amendment or a First Amendment retaliation claim. Thus, Defendants' Motion for Summary Judgment, [R. 274], will be GRANTED. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 1, 2019

cc: Counsel of Record

Leonel Martinez
216925
GREEN RIVER CORRECTIONAL COMPLEX
1200 River Road
P. O. Box 9300
Central City, KY 42330-9300
PRO SE